**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lloyd D. SLOAN, Defendant-Appellant.**

**No. 86–1591.**

United States Court of Appeals,
Tenth Circuit.

Feb. 17, 1987.

John E. Green, First Asst. U.S. Atty., Oklahoma City, Okl. (William S. Price, U.S. Atty., with him on the briefs), for plaintiff-appellee.

Gary Peterson, Oklahoma City, Okl., for defendant-appellant.

Before McKAY, MOORE and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is the second appeal in this case following a conviction of the crime of kidnapping, 18 U.S.C. § 1201.[1] Following our reversal of the first conviction, defendant was tried two more times. The first ended in a mistrial when the jury was unable to reach a verdict, and the second in the present conviction. Defendant Sloan presents several issues for review, the most significant of which is the question whether the trial court's denial of defend-

---

1. *United States v. Sloan*, 776 F.2d 926 (10th Cir.1985).

ant's request to present objections to the instructions outside the presence of the jury (as specifically required by Fed.R. Crim.P. 30) is reversible error. We hold that where, as here, the denial is coupled with an instruction that effectively adds elements which are not charged in the indictment, reversible error has been committed.

## I.

Defendant was charged in an indictment which accused him of willfully and knowingly transporting a named woman in interstate commerce from Oklahoma to Mississippi. The indictment further charged that the woman had been "unlawfully seized, abducted, confined and kidnapped" by the defendant and "held for ransom, reward or otherwise." The evidence established that the defendant approached his victim at an Oklahoma City car wash and, with a knife in his hand, told her that he was an escaped convict and that he wanted a ride. After getting in the victim's car, defendant launched upon a twenty-four hour odyssey that took the pair through three states. Ultimately, the victim was able to escape when defendant ordered her to enter a truck stop in Hattiesburg, Mississippi, to obtain a road map. Upon the arrival of law enforcement officers who had been called to the scene, defendant sped away, only to be captured after a short chase.

The trial was very brief. After closing arguments and the delivery of the charge, the court called counsel to the bench. The following colloquy then occurred out of the hearing of the jury:

> THE COURT: You have heard my instructions. Does the government have any record to be made in their regard?
>
> MR. GREEN: No, sir, Your Honor.
>
> THE COURT: Mr. Peterson?

> MR. PETERSON: Your Honor, I request a hearing on my objections outside the presence of the jury.
>
> THE COURT: What?
>
> MR. PETERSON: I request a hearing outside the presence, in other words, in a different room than the jury is in.
>
> THE COURT: For what purpose?
>
> MR. PETERSON: So the jury will not hear the bench conference, and it will not appear that I am taking a position antagonistic to the trial judge.
>
> THE COURT: Well, number one, they can't hear us. Number two, it's never been necessary before in ten-and-a-half years of trying cases in this Court.
>
> Third, you are now given the opportunity to make any record on the instructions that you may want to make so that if I agree with you I can instruct the jury accordingly.
>
> So I'll ask you to proceed.
>
> MR. PETERSON: Very well.

> .    .    .    .    .

> I would object to the language concerning inveigled or decoyed on the grounds that it's not applicable to this case. It's not charged in the indictment, and the instruction effectively amends the indictment.

The court did not respond to this objection. While the court discussed two other objections, it did not specifically rule on any of them.

■ Defendant's request for the opportunity to make objections outside the presence of the jury was made in light of Fed.R.Crim.P. 30 which states, in part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.... The court *shall* inform counsel of its proposed action upon the requests *prior to their arguments to the jury*,[2] but the court shall instruct the

---

2. The record is silent regarding compliance with this portion of Rule 30; however, at oral argument counsel agreed that instructions were settled with a law clerk and not the judge. We regard the import of the rule to be plain; that is,

the *judge* must resolve all the issues pertaining to the instructions, for it is the sole responsibility of the *judge* to see to it that the jury is correctly instructed upon the law. While this departure from the norm has not been raised as

jury after the arguments are completed.... Opportunity *shall be given* to make the objection out of the hearing of the jury and, *on request of any party, out of the presence of the jury.*

(Emphasis added.)

The importance of the last clause of Rule 30 cannot be gainsaid. Properly applied, the rule prevents the jury from assuming that counsel and the court have become antagonistic over a point of law. *Hamling v. United States*, 418 U.S. 87, 134, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974); *United States v. Salinas*, 601 F.2d 1279, 1283 (5th Cir.1979), *cert. denied sub nom. Adamson v. United States*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983). When counsel for the government or the defendant takes issue with proposed instructions, the jury should not be placed in the position to surmise from the actions of the participants a circumstance which may not exist. Even though the jury might be unable to hear what is taking place, the subtle psychological inferences that can easily be drawn from the mere appearance of confrontation would be grossly unfair to the objecting party.

More importantly, when counsel is restricted to a few moments of whispered allocution at sidebar, effective advocacy is seriously diminished. That point can be no more evident than in this case where essential arguments had to be confined to hastily expressed conclusions.

It is difficult to conceive of a more critical stage of a jury trial than the preparation and delivery of the charge. The charge effectively converts the jury from a collection of citizens ignorant of the law into true judges of the facts. Thus, trial courts must be painstaking in superintending the process of conversion. A few extra moments taken to insure the propriety of the charge is an investment in the fairness of the trial which will be returned many times in the justice achieved.

Essential to the process of preparing a proper charge is counsel's participation in the task. Counsel must be allowed a fair opportunity to express and argue views on the instructions. It also follows that allowing a full airing of objections will permit the court the opportunity to discover and correct errors in the charge before deliberations commence.

■ The plain language of Rule 30 makes evident in this case that the trial court erred in refusing defendant's request.[3] *See United States v. Watson*, 669 F.2d 1374, 1388 (11th Cir.1982); *Hall v. United States*, 378 F.2d 349 (10th Cir.1967). This conclusion does not dispose of the issue, however, because we must determine whether the error was prejudicial. *Hamling*, 418 U.S. at 135, 94 S.Ct. at 2916; *Watson*, 669 F.2d at 1388.

In *Hamling*, the Supreme Court concluded that failure to grant a Rule 30 hearing out of the presence of the jury is not *per se* reversible error. The court held reversible error occurs only when the failure results in prejudice, without deciding where the burden lies for establishing that prejudice on appeal.

■ We find ourselves in the same posture as the *Hamling* court, for the prejudice in this instance is manifest. Thus, we need not decide now if the government or the defendant has the burden of proving

error in the case, and thus has no direct effect on our decision, it appears to have been a contributing factor to the issue with which we deal; thus, we deem it significant enough to warrant at least passing comment.

**3.** When this issue was raised in defendant's motion for a new trial, the trial court's dispositive order implied that the prior trials of the same case effectively made argument on the instructions unnecessary. We disagree. While the court may well have been aware of arguments previously made, this trial took place upon a clean slate, and the rights accorded the parties by the rules were not diminished by repetition of events. The government argues that the district court complied with Rule 30 because there is nothing in the record which indicates the jury *heard* the defense argument. This contention begs the issue. If the only concern is whether the jury *hears* what takes place, that portion of Rule 30 mandating a proceeding out of the *presence* of the jury would be superfluous.

whether a Rule 30 violation resulted in prejudicial error.

As noted already, one of defendant's principle contentions was that the instruction defining the crime of kidnapping added means of committing the offense that were not charged in the indictment. Thus, defendant argues, he was called upon after all the evidence was in to defend himself against a charge not before the jury until the instructions were delivered.[4] This point is not academic because of the state of the evidence.

The original indictment charged that the defendant effected the kidnapping by force because it stated he committed the criminal act by seizing and abducting the victim. Yet, using the statutory definition of the crime, the court instructed the jury that "[w]hoever unlawfully seizes, confines, *inveigles, decoys*, kidnaps, or carries away ... any person" is guilty of violating 18 U.S.C. § 1201. (emphasis added). The court further instructed the jury that the essential elements of kidnapping are transporting a person in interstate commerce and "[d]oing such act ... while such person was unlawfully seized or confined *or inveigled or decoyed....*" (emphasis added).

The distinction is important because the testimony of the victim was equivocal regarding the use of force. She testified that the defendant approached her with a knife in his hand, but she added nothing further. She did not state directly that the knife was brandished or otherwise used in a threatening way. At the same time, she implied that she initially complied with the

defendant's wishes because of a falsehood. She stated that when she asked defendant what he wanted, he replied that he was an escaped convict (which was untrue) and that he just wanted a ride. Potentially negating the implication that force was employed by the defendant, the victim also testified she was told that he was not going to hurt her. Immediately after the defendant told her what he wanted, the victim got in her car and, at defendant's direction, slid over to the passenger side and allowed the defendant to drive. This was the totality of the evidence of defendant's initial assertion of dominion over the victim. In this scenario, it is easily conceivable that the jury believed he committed the crime by the ruse that he was an escaped convict and that force had not been employed.[5]

▪ The government takes solace from the fact that the instruction providing the definition of the offense was faithful to the statute. Yet, that contention provides us no comfort. The defendant was not *charged* with inveigling or decoying his victim. The indictment charged that the victim was "seized, abducted, confined and kidnapped," and the expedient of instructing the jury in the language of the statute violated the Fifth Amendment by effectively adding elements not charged.[6] We believe that allowing an opportunity for full argument of this issue would have made this problem clear to the trial court, and we would not now be facing it, nor would the district court have to try the case a fourth time.

> If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, ... the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed.
> (quoting *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887)).

---

**4.** If counsel had the benefit of arguing this point to the court while the charge was being formulated, this problem quite possibly could have been avoided.

**5.** The court instructed that "inveigle means to lure or entice or lead astray by false representations or promises or other deceitful means." The word "decoyed" was not defined, but its implication within the evidence of this case by an otherwise uninformed jury is not fanciful.

**6.** As the Supreme Court stated in *Stirone v. United States*, 361 U.S. 212, 216, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960):

## II.

Defendant raises several other issues which we will discuss so that they will not arise again. In doing so, however, we do not imply reversible error on the part of the trial court.

The victim testified that during the course of the journey defendant fondled and raped her. The government ostensibly introduced this evidence to show that the defendant was detained against her will. While we believe this connection is tenuous, defendant's only contention is that he was not permitted the opportunity to rebut the evidence of rape. Specifically, defendant objects that because a government witness testified a "rape kit" was administered to the victim in a Hattiesburg hospital, the trial court erred by not allowing defense counsel to ask the victim whether she had sexual intercourse on the day before she encountered the defendant. The court disallowed the inquiry because it found the answer would have been "irrelevant" and "prejudicial." Because the government did not attempt to introduce the results obtained by use of the so-called rape kit, we perceive no error in the court's ruling. Notwithstanding, since the results of the test were not introduced, the testimony regarding the rape kit was needless and should not be repeated on retrial.

■ Defendant argues the district court improperly admitted testimony of the victim's employer that she was "completely trustworthy" and "very honest." These statements were part of an otherwise proper effort to show that because she was a dependable employee she would not voluntarily have run off with the defendant without notifying her supervisor. While the questioned testimony went beyond that point and became improper evidence of good character, we judge it to have been harmless. Nonetheless, the prosecutor should avoid inclusion of similar testimony on retrial.

■ Defendant next argues the trial court improperly received non-expert testimony regarding "rape trauma syndrome."

The government called a volunteer worker from a rape crisis center who counseled the victim after her hospital examination. This person did not use the words "rape trauma syndrome," but she did testify that the victim was "shocky, nervous, tense, shakey ... wringing her hands and she was trembling." Over defendant's objections, the witness also testified that she had observed approximately thirty adult and child victims of rape and that the victim's "reaction to her victimization was not different than [sic] some of my victims." Once again, this testimony was admitted to show the victim had been held aginst her will, and once again we think the connection is tenuous. While the victim's *nervous condition* certainly is evidence of her unwilling confinement, the use of this condition to establish she had been *raped* is problematic. On retrial, the effort to effect this questionable connection should not be made.

■ Defendant contends that the court erred in refusing to instruct the jury on the Mann Act as a lesser included offense. We perceive no error because there is no inherent relationship between the Mann Act and the crime of kidnapping charged here and supported by the evidence. *See United States v. Pino*, 606 F.2d 908, 916–17 (10th Cir.1979). The kidnapping statute and the Mann Act simply do not protect the same interests; therefore, the inherent relationship which is required for inclusion of one crime within another is lacking.

■ Citing *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), *cert. denied*, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), defendant argues the court improperly instructed on flight because the evidence established an ambiguity regarding the reason behind his flight. Defendant's reliance on *Myers* is misplaced. That case held the evidentiary basis for the flight instruction was deficient because the evidence of flight was insufficient, and the accused had committed another crime which could have been the reason for his action. Here the flight occurred directly after the victim escaped, and it followed

the arrival of the police. There was no ambiguity in the reason behind the flight.

We have examined the remaining issues raised and find them wholly without merit. Because they will not arise upon retrial, we will not address them.

The judgment of the district court is REVERSED, and the case is REMANDED for a new trial.

Before BARRETT, SETH and LOGAN, Circuit Judges.