**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ronnie HORN, Defendant–Appellant.**

No. 90–5196.

United States Court of Appeals, Tenth Circuit.

Oct. 9, 1991.

Jo Stanley Glenn, Tulsa, Okl., for defendant-appellant.

John S. Morgan, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty. with him on the brief), for plaintiff-appellee.

Before HOLLOWAY, LOGAN and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant-appellant Ronnie Horn was convicted of conspiracy to possess with intent to distribute and conspiracy to distribute fifty grams or more of cocaine base.[1] 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(iii). The indictment alleged that defendant participated in a chain conspiracy in which the participants obtained cocaine from California and distributed it in the Comanche Park Apartments in Tulsa, Oklahoma from November 1988, to November 1989. Defendant appeals, contending that (1) the evi-

dence was insufficient to establish his guilt beyond a reasonable doubt, (2) the trial court should have instructed on a lesser included offense, i.e. possession, and (3) the Sentencing Guidelines are violative of due process because they fail to provide a departure procedure analogous to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 which may be used by defendants or the court. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 18 U.S.C. § 3742(a)(1). *See United States v. La Guardia,* 902 F.2d 1010, 1012 (1st Cir.1990) (constitutional challenge to guideline sentence cognizable under § 3742(a)(1)). We affirm.

I.

The essence of a drug distribution conspiracy is an agreement between two or more persons to traffic in controlled substances. *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988). Defendant contends that the government failed to prove beyond a reasonable doubt that he knew of the conspiracy, intended to join it and participated therein. Appellant's Brief at 6–10 (relying upon *United States v. Glasgow,* 658 F.2d 1036, 1040 (5th Cir. Unit B 1981)).

A conspiracy conviction requires the government to prove that "(1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became a part of it." *United States v. Esparsen,* 930 F.2d 1461, 1471 (10th Cir. 1991). A defendant's participation in a conspiracy is proven by evidence tending to show that the defendant shared a common purpose or design with his alleged coconspirators. *United States v. Fox,* 902 F.2d 1508, 1514 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990). The conduct of the alleged coconspirators, including the defendant, may be diverse and far-ranging, but it must be interdependent in some way. *United States v. Daily,* 921 F.2d 994, 1007 (10th Cir.1990). Thus, if the activities of a defendant charged with conspiracy facilitated

1. Defendant was convicted on retrial after the first trial resulted in a hung jury.

the endeavors of other alleged coconspirators or facilitated the venture as a whole, evidence of interdependence is present. *Id.*

■ Although narcotics trafficking conspiracies have been likened to chain conspiracies in which each link facilitates the conspiracy, the usual structure is not as rigid as the "chain conspiracy" label implies because narcotics networks are "loosely knit vertically integrated combinations." *United States v. Dickey,* 736 F.2d 571, 582 (10th Cir.1984) (internal quotations omitted), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985). A defendant must have a general awareness of other alleged coconspirators, but is not required to be personally acquainted with all coconspirators or know all of the details of the venture. *See Blumenthal v. United States,* 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154 (1947); *United States v. Harrison,* 942 F.2d 751, 756 (10th Cir.1991); *Savaiano,* 843 F.2d at 1294. A defendant's connection to a conspiracy may be slight, but that slight connection must be proven with evidence to establish knowing participation beyond a reasonable doubt. *See Direct Sales v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943); *Savaiano,* 843 F.2d at 1294. Casual transactions with persons involved in a conspiracy are insufficient to establish that critical connection—one who merely purchases drugs or property for personal use from a member of a conspiracy "does not thereby become a member of the conspiracy." *Fox,* 902 F.2d at 1514. "Those having no knowledge of the conspiracy are not conspirators...." *United States v. Falcone,* 311 U.S. 205, 210, 61 S.Ct. 204, 206–07, 85 L.Ed. 128 (1940). Nor does one become a member of a conspiracy merely by associating with conspirators known to be involved in crime. *See id.* at 210, 61 S.Ct. at 206–07 (casual unexplained meetings with conspirators insufficient to establish knowledge); *Fox,* 902 F.2d at 1514. We are mindful to guard against the mass application of guilt when conspiracy charges are involved because guilt is always dependent on personal and individual conduct, not on mere association or unknowing involvement. *See Kotteakos v. United States,* 328 U.S. 750, 773, 66 S.Ct. 1239, 1252, 90 L.Ed. 1557 (1946); *Harrison,* 942 F.2d 751, 755–56; *Fox,* 902 F.2d at 1514.

■ We review the evidence in the light most favorable to the government to determine whether any rationale trier of fact could find the defendant guilty beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979). This deferential standard recognizes that it is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S.Ct. at 2789. Credibility choices are resolved in favor of the jury's verdict, *id.* at 326, 99 S.Ct. at 2793; *United States v. Record,* 873 F.2d 1363, 1367 (10th Cir.1989), but we cannot sustain a conspiracy conviction if the evidence does no more than create a suspicion of guilt or amounts to a conviction resulting from piling inference on top of inference. *Direct Sales,* 319 U.S. at 711, 63 S.Ct. at 1269; *Fox,* 902 F.2d at 1513.

■ Applying these standards, we hold that a rational jury could find that defendant was part of conspiracy to possess with intent to distribute and a conspiracy to distribute fifty grams or more of cocaine base. The objective of this conspiracy was to distribute large amounts of cocaine for profit. *See United States v. Bouck,* 877 F.2d 828, 829–30 (10th Cir.1989). Verna Gilyard estimated her sales alone "in the thousands" of dollars. I Tr. 12. Another witness testified that the midlevel distributors received quantities of cocaine for distribution ranging from one-half kilogram (approximately eighteen ounces) to one and one-half kilograms. II Tr. 244 (Reynolds). According to Gilyard, the midlevel distributors in the conspiracy[2] supplied defendant

---

**2.** The top level of the conspiracy consisted of codefendants Lee Marvin and Kevin Wilson, who arranged for the transportation of the co-

caine from California to Oklahoma. II Tr. 229–30. Marvin and Wilson "fronted" cocaine to codefendants Ronnie Buckley and Dexter Alex-

with cocaine which he resold on seven occasions.[3] Gilyard testified that she saw defendant sell cocaine, "maybe about $400 worth," on a number of occasions and she identified two customers by name. I Tr. 6, 15. The sales occurred once or twice from her home and several other times from the surrounding area. I Tr. 8. According to Gilyard, the cocaine defendant sold was supplied by conspirators Buckley and Alexander. I Tr. 9, 26–27. Gilyard also testified that she observed Buckley give defendant cocaine in her home. I Tr. 26. Gilyard indicated that defendant promised her that he would help her with her bills with the proceeds of any cocaine sale. I Tr. 15.

Buckley testified that he supplied defendant with cocaine on two occasions, once as payment for car repairs and once for resale. I Tr. 45. When defendant did not pay him for the fronted cocaine, Buckley argued with the defendant. I Tr. 50. Gilyard and Alexander observed this argument. I Tr. 11, 96. Although the evidence conflicts, several witnesses testified that they observed defendant sell cocaine.[4] Gable McGlory testified that, on two or three occasions, he delivered a brown paper sack to defendant at Gilyard's apartment. II Tr. 198, 212. The sacks were sent by Wilson, whom McGlory knew to be a drug dealer. II Tr. 198–99. Finally, Alexander testified that defendant assisted in the distribution

scheme by bringing in customers and delivering crack cocaine to customers. I Tr. 96. Defendant was compensated for bringing in customers. I Tr. 97.

Defendant suggests that his testimony denying involvement in a conspiracy and the testimony of others who did not see him sell cocaine creates a reasonable doubt as to his guilt. He maintains that he merely purchased cocaine from members of the conspiracy, or worked on their autos in exchange for cocaine for personal use. Defendant points to his testimony that he confronted a dealer who was using children to sell dope. II Tr. 295–96. Defendant also suggests that no testimony links him to control of the brown paper bags or indicates their contents. Defendant suggests that none of the conspirators implicated him, and that Gilyard's testimony indicates that she became involved in the conspiracy only after defendant moved out of her apartment.

■■■■ Our review of the record suggests that other conspirators implicated the defendant as a member of the conspiracy based on the activities of procuring customers, selling cocaine and delivering it. Defendant's activities represent more than evidence of isolated transactions not linked to this conspiracy; to the contrary, Gilyard

---

ander, midlevel distributors. Under a "fronting" arrangement, a supplier provides the cocaine on credit, expecting prompt payment from proceeds realized on sale. Codefendant Verna Gilyard allowed Buckley and Alexander to use her apartment for their midlevel distribution activities in exchange for money or cocaine that she sold. I Tr. 14–15.

3. For a ten-year period, Gilyard was defendant's domestic partner, and two children were born of the relationship. I Tr. 5, 17. Defendant lived in Gilyard's apartment until mid-November 1988. II Tr. 286–87. After moving out, defendant visited his children at the apartment. I Tr. 10; II Tr. 246. In July 1989, codefendant Terrance Ferguson took up residence in the Gilyard apartment and sold cocaine. I Tr. 28–29.

4. Hugo Abraham, a dealer in the cocaine trade who was acquainted with Buckley and Alexander, first told the government that defendant had not sold cocaine. I Tr. 125. He later testified that he observed defendant selling cocaine twice at the apartment complex, although he

admitted on cross-examination that he changed his story to implicate defendant in hopes of a more lenient sentence. I Tr. 122–26, 135. On redirect, he indicated that his testimony was nonetheless true. *Id.* Another witness, Larue Simmons, testified that Buckley and Alexander fronted him with cocaine. II Tr. 157–58. Simmons further testified that in late 1988, or early 1989, he saw defendant sell cocaine once or twice in front of Gilyard's apartment, although he could not identify the source of defendant's cocaine. II Tr. 152–53. Aaron Reynolds also indicated that defendant sold cocaine in front of Gilyard's apartment in 1989. II Tr. 173–74, 193. Reynolds declined to identify his suppliers by name, but indicated that he did not get cocaine from Buckley or Alexander. II Tr. 179.

Buckley and Alexander indicated that they had not seen defendant sell cocaine. I Tr. 50, 109. Richard Reynolds, who stayed with his sister and sold cocaine at Comanche Park Apartments, testified concerning the overall workings of the conspiracy and indicated that he had not observed defendant sell cocaine. II Tr. 246.

testified that defendant obtained the cocaine he sold from Buckley and Alexander, the midlevel distributors, and Alexander testified that defendant sometimes brought in customers and made deliveries on behalf of the conspiracy. By agreeing to perform these tasks, defendant became part of the larger common plan to distribute well in excess of fifty grams of cocaine. *See Blumenthal*, 332 U.S. at 558, 68 S.Ct. at 257. The conspirators were "joined together by their knowledge of [the plan's] essential features and broad scope, though not of its exact limits, and by their common single goal." *See Id.* The fact that defendant may have been paid in-kind for some of his services is of no moment.

 That some witnesses testified that defendant's involvement was limited or nonexistent does not undermine the conviction; the prosecution need not eliminate every hypothesis except guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793. While sustaining the conviction only on the basis of the delivery of the brown paper bags would be problematic, other evidence suggests that defendant voluntarily participated in other activities to advance the purpose of this drug distribution conspiracy. Finally, although Gilyard's testimony is ambiguous concerning when defendant sold crack cocaine, a rational jury certainly could conclude that some of the sales occurred on or about mid-November 1988, prior to defendant's moving out of the apartment, and within the time frame alleged in the indictment. *See* I Tr. 10. A rational jury could conclude from defendant's own testimony that he was aware of the conspiracy and its objective of distributing cocaine. *See, e.g.,* II Tr. 294, 303. The same jury could choose to credit the testimony of other witnesses and determine that defendant knowingly and voluntarily became a part of the conspiracy, if only to supply his cocaine dependency. Sufficient evidence supports the conviction.

## II.

 Defendant next contends that the district court failed to instruct the jury properly on the lesser included offense of possession. Under Fed.R.Crim.P. 31(c), a defendant may be entitled to a lesser included offense instruction "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995–96, 36 L.Ed.2d 844 (1973). *See also Beck v. Alabama*, 447 U.S. 625, 635, 100 S.Ct. 2382, 2388, 65 L.Ed.2d 392 (1980); *Berra v. United States*, 351 U.S. 131, 133–34, 76 S.Ct. 685, 687–88, 100 L.Ed. 1013 (1956). A lesser included offense instruction may be given when (1) there has been a proper request, (2) the lesser included offense consists of some, but not all, of the elements of the offense charged, (3) an element differentiating the two offenses is a matter in dispute and (4) a jury could rationally convict on the lesser offense and acquit on the greater offense. *Fitzgerald v. United States*, 719 F.2d 1069, 1071 (10th Cir.1983). A trial court abuses its substantial discretion in instructing the jury on the applicable law when the failure to give a requested instruction precludes the jury from considering a material aspect of the defense. *United States v. Dennison*, 937 F.2d 559, 562–63 (10th Cir.1991).

In denying a lesser offense instruction on possession, the district court relied upon *United States v. Swingler*, 758 F.2d 477 (10th Cir.1985). II Tr. 278. In *Swingler*, the defendants were charged with conspiracy to distribute amphetamine and contended that possession and possession with intent to distribute were lesser included offenses on which the jury should have been instructed. *Id.* at 498–99. We rejected the contention for three reasons. First, there was a lack of evidence of possession or possession with intent to distribute. We noted that the defendants were not arrested with any amphetamine in their possession. Second, we concluded that possession and possession with intent to distribute are not lesser included offenses of conspiracy to distribute. We relied upon the "impossibility" test for determining whether a suggested lesser offense is indeed a lesser included offense of the greater. Under that test, only if it is impossible to

commit the greater offense without also committing the suggested lesser offense does an actual lesser included offense exist. *See Swingler,* 758 F.2d at 499; *Larson v. United States,* 296 F.2d 80, 81 (10th Cir.1961). We reasoned that since only one overt act need be committed for a conspiracy to distribute amphetamine, and that act need not and did not involve possession or possession with intent to distribute, the latter two offenses were not lesser included. *See Swingler,* 758 F.2d at 499 (citing *United States v. Brown,* 604 F.2d 557, 561 (8th Cir.1979)). Finally, even had the defendants possessed amphetamine, the evidence would not rationally allow acquital on the conspiracy charge.

■ *Swingler* involved conspiracy to distribute; this case involves conspiracy to possess with intent to distribute and conspiracy to distribute. Moreover, three important legal developments occurred after *Swingler.* First, we recognized the more liberal "inherent relationship" test for the determination of lesser included offenses. *See United States v. Pino,* 606 F.2d 908, 916 (10th Cir.1979) (relying on *United States v. Whitaker,* 447 F.2d 314 (D.C.Cir. 1971) & *United States v. Stolarz,* 550 F.2d 488 (9th Cir.), *cert. denied,* 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977)). *See also United States v. Joe,* 831 F.2d 218, 220 (10th Cir.1987) (applying inherent relationship test), *cert. denied,* 484 U.S. 1072, 108 S.Ct. 1043, 98 L.Ed.2d 1006 (1988); *United States v. Cooper,* 812 F.2d 1283, 1286–87, 1289 (10th Cir.1987) (same); *United States v. Sloan,* 811 F.2d 1359, 1364 (10th Cir. 1987) (same); *United States v. Zang,* 703 F.2d 1186, 1196 (10th Cir.1982) (same), *cert. denied,* 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983). Second, we determined that proof of an overt act is not required in a drug conspiracy under 21 U.S.C. § 846. *See Savaiano,* 843 F.2d at 1294.

The third and most significant development is that the Supreme Court rejected the inherent relationship test in favor of the traditional test for determining lesser included offenses. *Schmuck v. United States,* 489 U.S. 705, 715–22, 109 S.Ct. 1443, 1450–53, 103 L.Ed.2d 734 (1989).

> Under this [traditional] test, one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

*Id.* at 716, 109 S.Ct. at 1450. Thus, the Supreme Court has reinstated our use of the traditional test for determining when a lesser included offense instruction is appropriate. *See United States v. Lajoie,* 942 F.2d 699, 700 (10th Cir.1991) (recognizing traditional test). This traditional (or elements) test is sometimes referred to as the impossibility test because if the elements of a lesser offense must be a subset of the greater offense, then it is impossible to commit the greater offense without first having committed the lesser. *See Brown,* 604 F.2d at 560–61.

Neither party has cited or discussed the Supreme Court's decision in *Schmuck.* Applying this test, however, we hold that possession, possession with intent to distribute, and distribution are not lesser included offenses of conspiracy to commit these same offenses.[5] Possession, posses-

---

5. We would reject defendant's argument even under the inherent relationship test. Under that test, the greater and lesser offenses "must relate to protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense." *Whitaker,* 447 F.2d at 319 (footnote omitted); *Pino,* 606 F.2d at 916. The conspiracy statute, 21 U.S.C. § 846, protects against agreements with unlawful objects, i.e. circumvention of narcotics laws. On the other hand, the statutes prohibiting of possession, pos-

session with intent to distribute and distribution protect against the unlawful conduct itself. *See* 21 U.S.C. §§ 841(a)(1) & 844. *See also Sloan,* 811 F.2d at 1364 (lesser offense instruction not warranted when greater and lesser offense statutes do not protect the same interests). Section 846 does not require an overt act to be proven, although the government frequently will prove overt acts to show the necessary knowledge and agreement for a conspiracy. Here, no physical evidence of possession was offered. Although the government did present some testimonial evidence that defendant possessed unspecified quantities of cocaine, it also presented evidence

sion with intent to distribute, and distribution are substantive offenses which require the element of possession or distribution. Conspiracy to commit these same offenses under § 846 does not require an overt act, let alone possession or distribution. Thus, these substantive offenses (as suggested lesser offenses) require an element not required for the greater offense of conspiracy and are not lesser included offenses. *See Schmuck,* 489 U.S. at 716, 109 S.Ct. at 1450; *Swingler,* 758 F.2d at 499; *Brown,* 604 F.2d at 561. Stated another way, it is possible to conspire to commit these drug offenses without actually committing the offenses themselves; thus, it is *not* impossible to commit the greater offense (conspiracy) without committing the suggested lesser offenses. *See Larson,* 296 F.2d at 80. Just as the crime which is the object of the conspiracy and the conspiracy do not merge, the crime which is the object of the conspiracy does constitute a lesser included offense of the conspiracy. Defendant was not entitled to a lesser offense instruction on possession.

### III.

Defendant argues that the Sentencing Guidelines are violative of due process because they fail to provide a departure procedure analogous to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 which may be used by defendants or the court to depart below the statutory minimum. Section 3553(e) allows for "substantial assistance" departures below a statutory minimum; § 3553(e) and § 5K1.1 allow for guideline departures. However, in the context of the consititutional challenge made by defendant, "the guideline [§ 5K1.1] and its parent statute [§ 3553(e)] are substantively identical." *See United States v. Gardner,* 931 F.2d 1097, 1099 (6th Cir.1991).

▇▇ Defendant's total offense level was 34 with a criminal history category of I. The guideline range was from 151 to 188

months, U.S.S.G. ch. 5, Pt. A (imprisonment table); however, the district court departed downward *sua sponte* to the statutory minimum of 120 months, 21 U.S.C. § 841(b)(1)(A)(iii). The district court relied on two mitigating factors: (1) "this defendant was the least culpable person named in the Indictment, and they all received sentences of 72 to 84 months due to their cooperation with the government," and (2) "the defendant does not have a serious prior criminal record." I R. doc. 89 at 4. *See also* 18 U.S.C. § 3553(a)(6) (court should consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct") & (b) (court may depart downward if it finds a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines"); *United States v. Sorenson,* 915 F.2d 599, 603 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1002, 112 L.Ed.2d 1085 (1991). The district court could not depart below the statutory minimum of 120 months in the absence of a § 3553(e) motion by the government. *United States v. Tannis,* 942 F.2d 196, 198 (3rd Cir.1991) (district court departed downward from the guideline sentence, but could not depart downward from 120–month statutory minimum in the absence of a government motion); *United States v. Reina,* 905 F.2d 638, 640–41 (2d Cir.1990). The government has not appealed the sentence.

Defendant argues that the district court should have been allowed to depart below the statutory minimum of 120 months because the most culpable participants in this conspiracy all received lesser sentences under § 3553(e) and U.S.S.G. § 5K1.1. Defendant further argues that the government's discretionary power to recommend departures below the statutory minimum should be matched by a mechanism which

---

of defendant's courier activities in aid of the conspiracy which did not involve possession. "Considering the proof adduced at trial in support of the charged offense," we cannot conclude that "proof of the lesser offense [possession] is necessarily presented as part of the

showing of the commission of the greater offense [conspiracy]." *See Whitaker,* 447 F.2d at 319; *Pino,* 606 F.2d at 916. Thus, even under the inherent relationship test, defendant would not prevail.

would allow the court to avoid sentencing disparities between those who substantially assist the government and those who assert their constitutional right to a trial.

■ As an initial matter, we note that under § 3553(e), the prosecution has the power only to recommend a sentence below the statutory or guideline·minimum; the district court in its discretion decides whether to reduce the sentence. *United States v. Musser*, 856 F.2d 1484, 1487 (11th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989). The government's power "is no different from the government's power over a defendant's ultimate sentence through its exclusive and unquestioned authority regarding what charges to bring or whether even to charge a defendant at all." *Gardner*, 931 F.2d at 1099. "The defendant's right is to be prosecuted and tried in accordance with the standards of due process and not to be given an agreement of compromise." *United States v. Wade*, 936 F.2d 169, 173 (4th Cir.1991).

[18] Defendant's argument is nothing more than a call for a reallocation of power in the sentencing process. We have rejected the notion that a defendant has a due process right to a discretionary, individualized sentence in a noncapital case, *United States v. Thomas*, 884 F.2d 540, 543 (10th Cir.1989), and § 3553(e) and U.S.S.G. § 5K1.1 have withstood due process challenges by defendants who were denied substantial assistance reductions. *See United States v. Snell*, 922 F.2d 588, 591 (10th Cir.1990); *United States v. Deases*, 918 F.2d 118, 119–20 (10th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991); *Sorenson*, 915 F.2d at 603; *United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990). *See also United States v. Huerta*, 878 F.2d 89, 93–94 (2d Cir.1989), *cert. denied*, 493 U.S. 1046, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). In *United States v. Broxton*, 926 F.2d 1180 (D.C.Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 1118, 113 L.Ed.2d 226 (1991), the D.C. Circuit rejected an argument that § 3553(e) is constitutionally infirm because only the government may make a motion to reduce sentence below the minimum. *Id.* at 1183. Of note is the D.C. Circuit's rejection of the argument that the statute impermissibly

disadvantages those who are unable to render substantial assistance to the government. *Id.* The condition that the government move for a reduction under § 3553(e) and § 5K1.1 is reasonable and does not offend due process. *United States v. Valencia*, 913 F.2d 378, 386 (7th Cir.1990); *United States v. Grant*, 886 F.2d 1513, 1514 (8th Cir.1989).

■ As we understand defendant's argument, he also is challenging the substantial assistance provisions as a denial of equal protection. However, the sentencing disparity created by application of § 3553(e) and § 5K1.1 to some codefendants and not others does not offend equal protection because a rational connection exists between obtaining information concerning narcotics and providing an opportunity for a sentence reduction in exchange for such information. *See Musser*, 856 F.2d at 1487 (rejecting equal protection challenge). Thus, the disparity between defendant's sentence and that of his codefendants is explainable because of different circumstances, *see United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir.1990); *United States v. Trujillo*, 906 F.2d 1456, 1465 (10th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 396, 112 L.Ed.2d 405 (1990), and rational. The substantial assistance reduction afforded codefendants reflects different circumstances and does not confer an independent right on the defendant for an identical reduction.

AFFIRMED.