977 F.2d 595
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Darrold CRAIN, Petitioner-Appellant,
v.
Frank O. GUNTER, Executive Director, Colorado Department of
Correction, Canon City, Colorado, Respondent-Appellee.
 No. 91-1383.
 United States Court of Appeals, Tenth Circuit.
 Oct. 15, 1992.
 
 Before McKAY, Chief Judge, and BARRETT, Circuit Judge, and BRIMMER,* District Judge.
 ORDER AND JUDGMENT**
 McKAY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Darrold Crain appeals from the district court's judgment denying his petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254. Mr. Crain also applies to this court for a certificate of probable cause. Determining Mr. Crain's issue to be capable of debate, we grant the application. See Harris v. Allen, 929 F.2d 560, 561 (10th Cir.1991). The issue presented on appeal was first presented to the Colorado Court of Appeals, which affirmed in People v. Crain, No. 87CA1530, slip. op. (Colo.Ct.App. Aug. 10, 1989), and then to the Colorado Supreme Court, which denied certiorari. Crain has thus exhausted his state remedies.
 
 
 3
 Mr. Crain challenges the sufficiency of the evidence upon which he was convicted on September 15, 1987, in Colorado state court on one count of second degree burglary under Colo.Rev.Stat. § 18-4-203(1), (2)(a) (1986 Repl.Vol. 8B), and one count of class 4 felony theft under Colo.Rev.Stat. § 18-4-401(1)(a), (2)(c) (1986 Repl.Vol. 8B), for acts allegedly committed on March 8, 1987. We affirm.
 
 
 4
 In order to convict the defendant of second degree burglary as charged, the government was required to prove beyond a reasonable doubt that the defendant knowingly broke an entrance into, or entered, or remained unlawfully in a dwelling with the intent to commit in the dwelling a crime against a person or property. Colo.Rev.Stat. § 18-4-203(1), (2)(a) (1986 Repl.Vol. 8B).
 
 
 5
 In order to convict the defendant of class 4 felony theft as charged, the government was required to prove beyond a reasonable doubt that the defendant knowingly obtained or exercised control over something of value of another without authorization, or by threat or deception, that the value of the thing was over $300 but less than $10,000, and the defendant intended to deprive the other person permanently of the use or benefit of the thing of value. Colo.Rev.Stat. § 18-4-401(1)(a) (1986 Repl.Vol. 8B).
 
 
 6
 In reviewing a sufficiency of the evidence challenge, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We consider all the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn from it. See United States v. Hager, 969 F.2d 883, 887 (10th Cir.1992) (citing United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986)). The evidence "must be substantial; that is, it must do more than raise a mere suspicion of guilt." Beachum v. Tansy, 903 F.2d 1321, 1332 (10th Cir.), cert. denied, 111 S.Ct. 269 (1990). Circumstantial evidence alone may be sufficient to support a conviction. See Hager, 969 F.2d at 888. The circumstantial evidence required to support a verdict need not exclude every reasonable hypothesis other than guilt. Id. (citing United States v. Alonso, 790 F.2d 1489, 1493 (10th Cir.1986)). It " 'must only reasonably support the jury's finding of guilt beyond a reasonable doubt.' " Id. (quoting United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir.1991)). We may not sustain a conviction if it resulted only "from piling inference on top of inference" from the evidence. See United States v. Horn, 946 F.2d 738, 741 (10th Cir.1991) (citing Direct Sales Co. v. United States, 319 U.S. 703, 711 (1943)).
 
 
 7
 All reasonable inferences and credibility choices are made in favor of the jury's verdict. United States v. Massey, 687 F.2d 1348, 1354 (10th Cir.1982). The jury in a case has the discretion to accept or reject whatever evidence it chooses. Hager, 969 F.2d at 888. The credibility of a witness and weight of his testimony are for the jury alone. Id. (citing United States v. Leach, 749 F.2d 592, 600 (10th Cir.1984)).
 
 
 8
 The evidence showed that on March 8, 1987, Dennis Cullen left his house at 1745 Jay in Lakewood at about 8:00 p.m. and returned shortly before midnight. Transcript, Appellant's App. at 108-09. As Mr. Cullen was driving north on Jay toward his house and was about a block away, he noticed a man in a light-colored coat walking quickly away to the north from the area in front of his house. Id. at 109, 111, 117, 130. When the man saw the headlights, he stopped momentarily and then turned west into an apartment complex at 1765 Jay. Id. at 109, 111-12, 159. Mr. Cullen noticed the pedestrian because the weather was inclement--the temperature was below freezing and the streets were very icy. Id. at 112. It had been snowing or drizzling all night and there was some snow on the ground. Id. at 138, 160, 197. Mr. Cullen did not get a good look at the man. Id. at 130. When Mr. Cullen opened the front door to his house, he noticed that his stereo and television were gone. Id. at 112. He also saw that the back door was ajar and there was a fist-sized hole in the window of the door. Id. at 112, 115. Through a hole in the window, the back door could easily be unlocked. Id. at 115. Mr. Cullen immediately left his house, drove to his cousin's house nearby, and called the police. Id. at 116.
 
 
 9
 Agent Daniel Garcia, a canine handler, responded first to the call, arriving at about 12:11 a.m. Id. at 155, 158-59. As Officer Garcia was driving north on Jay, he saw a white Cadillac pull into the parking lot of the apartment complex at 1765 Jay. Id. at 159. Officer Garcia parked his car a couple of houses south of Mr. Cullen's house and walked to it. Id. at 161-62. He looked around outside while waiting for his backup to arrive. Id. at 162. The snow covering the back yard was "clean as carpet." Id. at 192. As Officer Garcia walked back to the front of Mr. Cullen's house along the driveway on the south side, Officer Garcia saw a man wearing a dark brown jacket walking south on Jay toward Mr. Cullen's house from the direction of the apartment complex. Id. at 162-65, 190. Officer Garcia stopped the man, Mr. Crain, and asked him what he was doing. Id. at 165.
 
 
 10
 Mr. Crain identified himself and explained that he had just parked his car, the white Cadillac, in the parking lot of the apartment complex because he had had a fight with his wife and he wanted to hide the car from her. Id. at 165-66. He was walking back to the Blue Sky Motel at Colfax and Jay, about two blocks away, where he was staying in Room 19. Id. at 165, 167. Mr. Cullen returned home at this time, about 12:15, and, in response to Officer Garcia's question, said he did not know Mr. Crain and had never seen him before. Id. at 116-17, 129, 196. Officer Garcia allowed Mr. Crain to go on his way. Id. at 167.
 
 
 11
 Officer Garcia's backup, Agent Matthew Storrs, arrived at 12:13. Id. at 136. The two officers went through Mr. Cullen's house with Officer Garcia's dog. Id. at 134, 167. Nobody was in the house. Id. at 175. Mr. Cullen determined that his television, computer, Seiko watch, stereo, and one stereo speaker had been stolen. Id. at 124-28. The second stereo speaker had been moved from the living room to near the back door. Id. at 118.
 
 
 12
 The police officers decided to look around the area for the stolen property. Officer Garcia testified that, in his experience, it was not unusual for a thief to hide stolen property somewhere and come back later for it with a car. Id. at 179. Because Mr. Cullen had seen a man running toward the apartment complex when he first arrived home, Officer Garcia commanded his dog to track. Id. at 175-76. The dog demonstrated track behavior, pulling the officers north from Mr. Cullen's house and then west along the driveway to the apartment complex at 1765 Jay. Id. at 176. The officers found all of Mr. Cullen's property except his Seiko watch stacked in two stacks next to the trash dumpsters at the southwest corner of the apartment complex lot. Id. at 120-22, 129, 138-39, 179. There was a drizzle of snow on Mr. Cullen's property, id. at 139, 197, but not enough to damage any of it, id. at 125; see also People's Exhibit 8, Appellant's App. at 250-51 (photograph of one stack of property next to dumpster).
 
 
 13
 Mr. Crain's car was parked five to ten feet away from the dumpsters and Mr. Cullen's stolen property. Transcript, Appellant's App. at 140, 180-81. Mr. Crain's car was the only car parked in that area of the parking lot. Id. at 145. The front doors of the car were unlocked, the keys were in the ignition, and the trunk lid was unlatched and slightly ajar. Id. at 140-41, 183. The officers testified that this area of Lakewood is a high crime area. Id. at 132, 185. People's Exhibit 10 was a photograph of the back of the Cadillac. See Appellant's App. at 248-49. Both police officers testified it showed the trunk lid to be ajar. Transcript, Appellant's App. at 142, 184.
 
 
 14
 Officer Garcia went to the Blue Sky Motel to question Mr. Crain. Id. at 184. He met Mrs. Crain outside the motel. Id. at 186. She was looking for her car. Id. at 199. Jeffrey Rogers, an additional officer who was called to assist Officer Garcia, testified that he saw Mrs. Crain outside the motel on his way to meet Garcia and she appeared to want him to stop. Id. at 201-02. Mr. Crain was at his motel room. Id. at 186. He repeated that he had moved his car and left the keys in it to hide them from his wife. Id. at 187. He said the trunk lid was not open, id. at 190-91, and it was just a coincidence that he parked next to stolen property. Id. at 187-88.
 
 
 15
 Officer Garcia arrested Mr. Crain on suspicion of burglary and theft. Id. at 188. No stolen property was found in Mr. Crain's car, id. at 191, or on his person, id. at 192, and none was seen in the motel room, although it was not actually searched, id. at 188. The only item not recovered from the property found near the dumpsters was Mr. Cullen's Seiko watch. Id. at 129.
 
 
 16
 From these facts, the only question is whether it was reasonable for the jury to infer that Mr. Crain was the burglar of Mr. Cullen's house. Although it is a close question, we think the jury's verdict was reasonable.
 
 
 17
 The hour was late and the weather inclement. Mr. Crain's car was found parked near the stolen property, unlocked, the keys in the ignition, and the trunk lid unlatched. Mr. Crain had no connection to the place other than his explanation that he picked it to hide his car from his wife. The property had not been outside long enough to be covered with more than a drizzle of snow or to be damaged, indicating that the burglary had been interrupted recently and not earlier in the evening.
 
 
 18
 The jury in this case was free to believe the police officers rather than Mr. Crain that the trunk lid of Mr. Crain's car was unlatched. Mr. Crain strenuously argues that Exhibit 10, the photograph of the back of the Cadillac, clearly shows the trunk lid was latched. We believe this photograph is ambiguous. There are points where the snow is connected along the lower rim of the trunk lid; there are also points where the snow is disconnected. It was for the jury to determine whether the photograph showed the trunk lid to be closed or ajar, especially in light of the two police officers' testimony that the trunk lid was unlatched. The jury was likewise free to reject the explanation Mr. Crain offered to Officer Garcia for parking his car with the keys in it at 1765 Jay and to discount the evidence of a possible second man in a light-colored coat.
 
 
 19
 Although this case presents a close question, "the restrictive standard of review for a sufficiency of the evidence question provides us with very little leeway." United States v. Evans, 970 F.2d 663, 671 (10th Cir.1992). We recognize that the evidence in this case supporting the defendant's convictions is circumstantial. Several inferences from the evidence are required to reach the jury's result. The verdict does not result, however, "from piling inference on top of inference." See Horn, 946 F.2d at 741. After a careful examination of the record in this case, we conclude that there is sufficient evidence to support Mr. Crain's convictions.
 
 
 20
 The judgment of the United States District Court for the District of Colorado is AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3