2 F.3d 1161
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Abel Gilberto SALINAS-CANO, Defendant-Appellant.
 No. 92-2249.
 United States Court of Appeals, Tenth Circuit.
 Aug. 11, 1993.
 
 Before MCKAY, Chief Judge, LOGAN and TACHA, Circuit Judges.
 ORDER AND JUDGMENT*
 LOGAN, Circuit Judge.
 
 
 1
 Defendant Abel Gilberto Salinas-Cano appeals his conviction for conspiring to distribute, and for possession with intent to distribute, more than 100 grams of heroin, in violation of 21 U.S.C. Secs. 841(a)(1), (b)(1)(B) and 846, and 18 U.S.C. Sec. 2. The only issues on appeal are the sufficiency of the evidence to convict on the two counts.
 
 
 2
 In June 1990, DEA Special Agent Jesus Gallo while working undercover in Albuquerque learned the name and phone number of an individual to contact if he was interested in purchasing heroin. Gallo called the number, spoke to an individual who identified himself as "Manny," and arranged a meeting at a local restaurant. Gallo, "Manny" (later identified as Manuel Navarette), and defendant were present at that meeting, which took place on June 6th. Gallo stated that he was interested in purchasing sixteen ounces of heroin and Navarette informed him that could be arranged. Defendant and Navarette conferred, and Navarette quoted a price of $3500 per ounce. No sale was made at that time but it was understood that Gallo would be contacted as soon as the heroin was available.
 
 
 3
 On June 11, Gallo received a phone call from an individual later identified as Carlos Barrera, who arranged another meeting at the same restaurant. Gallo, Navarette, and Barrera attended that meeting, at which they discussed the impending heroin sale. Although the full sixteen ounces was not yet available for sale, Gallo did purchase a one ounce sample for $4000 at this meeting. They agreed to remain in contact. Gallo saw Navarette and Barrera again on June 19, and they told him they would have eight ounces available to sell the next day.
 
 
 4
 On June 20, Gallo, with the assistance of other law enforcement agents, arrested Navarette, Barrera, and defendant in the parking lot of a K-Mart store in Albuquerque as the drug deal was consummated. Although defendant was present in the parking lot at the time, he was unarmed, no drugs were found on his person, and he was about 100 feet away from Navarette, Barrera, and the law enforcement personnel posing as drug purchasers. Defendant argues on appeal that there was insufficient evidence for the jury to convict him.
 
 
 5
 When a defendant challenges the sufficiency of the evidence supporting his conviction, "we must view all of the evidence, both direct and circumstantial, in the light most favorable to the government, and all reasonable inferences and credibility choices must be made in support of the jury's verdict." United States v. Evans, 970 F.2d 663, 671 (10th Cir.1992) (quoting United States v. Dickey, 736 F.2d 571, 581 (10th Cir.1984), cert. denied, 469 U.S. 1188 (1985)), cert. denied, 113 S.Ct. 1288 (1993).
 
 
 6
 To prove conspiracy, the government must prove "that two or more persons agreed to violate the law, that the defendant knew at least the essential objectives of the conspiracy, and that the defendant knowingly and voluntarily became a part of it." United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.), cert. denied, 498 U.S. 874 (1990). The evidence must also demonstrate "the essential element of interdependence among the co-conspirators." Id. (quotation omitted). We have no difficulty upholding the jury's verdict that the evidence was sufficient as to each of these elements.
 
 
 7
 The essence of defendant's argument is that his mere association with conspirators and his knowledge of their activities does not make him a member of the conspiracy. See Fox, 902 F.2d at 1514 ("Mere association with conspirators, even with knowledge of their involvement in crime, is insufficient to prove participation in their conspiracy."). Defendant characterizes his conduct at the June 6th meeting and his presence at the scene of the arrest as wholly innocent. In light of the evidence adduced at trial, however, the jury was entitled to believe otherwise.
 
 
 8
 Agent Gallo testified that although Navarette "dominated" conversation at the June 6th meeting, Navarette and defendant conferred regarding their selling price. Further, Gallo stated that it was defendant who told him that their supplier was from Sonora, Mexico.[1] On June 20th, defendant was observed inside the K-Mart store near where Gallo and Barrera were meeting to confirm that the deal would go forward. Just before the arrests defendant was standing near some phone booths, looking out over the parking lot where the exchange of money and drugs was to occur. During this time both Navarette and Barrera passed close enough to defendant so that they might have communicated. The vehicles that Navarette, Barrera, and defendant used throughout this period were registered in defendant's name.
 
 
 9
 Here, we can infer from defendant's presence at and participation in the June 6th meeting, where plans to sell sixteen ounces of heroin were made explicitly, that he agreed to join a conspiracy to distribute more than 100 grams of heroin, see United States v. Esparsen, 930 F.2d 1461, 1472 (10th Cir.1991) (agreement among co-conspirators to distribute drugs may "rationally be inferred from the frequent contacts among them and their joint appearances at transactions and negotiations"), cert. denied, 112 S.Ct. 882 (1992), and that he "shared a common purpose or design with his alleged coconspirators," Evans, 970 F.2d at 669 (quotation omitted). Similarly, defendant's conduct at the June 6th meeting establishes that he was a knowing and voluntary participant in the conspiracy. See United States v. Slater, 971 F.2d 626, 630 (10th Cir.1992) ("A defendant's connection to a conspiracy may be slight, but that slight connection must be proven with evidence to establish knowing participation beyond a reasonable doubt."). Lastly, defendant's surveillance of the K-Mart store and parking lot just before his arrest and the use of his vehicles establishes his interdependence with Navarette and Barrera, whom the jury could find relied on him to keep watch over the scene of the drug sale and for transportation. See Fox, 902 F.2d at 1514 ("each alleged coconspirator must depend on the operation of each link in the chain to achieve the common goal"). The jury's conclusion that defendant conspired with others to distribute heroin did not require them "to pile inference on inference." United States v. Anderson, 981 F.2d 1560, 1564 (10th Cir.1992).
 
 
 10
 The same evidence that permitted the jury to find that defendant conspired to distribute heroin also supports the finding that he possessed the heroin with the intent to distribute it. See United States v. Brooks, 940 F.2d 598, 600 (10th Cir.1991) ("To constructively possess contraband, a person must knowingly hold the power and ability to exert control over it."). Defendant's participation in the conspiracy establishes his dominion over the heroin. The fact that it was not on his person, and that others were involved is not material. "Constructive possession can be established by circumstantial evidence and may be joint among several individuals." Id.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrine of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In answering what specifically defendant had contributed to the conversation on June 6th, Agent Gallo said "He had stated that Mr. Salinas told me that his supplier was from Sonora, Mexico." II R. 97. It appears that Agent Gallo began his sentence with "he had stated that" and then started over again with "Mr. Salinas told me." Although this statement is somewhat confusing in transcription, the record reveals that Agent Gallo's meaning was clear at the time he testified. See II R. 103