5 F.3d 548
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond Derrial MADDEN, Defendant-Appellant.
 No. 92-6206.
 United States Court of Appeals, Tenth Circuit.
 Aug. 20, 1993.
 
 Before BRORBY, BARRETT and KELLY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 Mr. Madden was convicted of distribution of phenylacetic acid, a precursor chemical in the manufacturing of methamphetamine, 21 U.S.C. 841(d)(2), conspiracy to possess with intent to distribute phenylacetic acid, 21 U.S.C. 846, and use of a telephone to facilitate a narcotics conspiracy, 21 U.S.C. 843(b). He received concurrent sentences of seventy-eight months on the distribution and conspiracy counts and forty-eight months on the facilitation through use of a telephone count. Mr. Madden appeals, challenging the sufficiency of the evidence, and the district court's upward adjustment of his base offense level for being an organizer, leader, manager or supervisor of a criminal activity. Our jurisdiction arises under 28 U.S.C. 1291 and 18 U.S.C. 3741 and we affirm.
 
 
 2
 Mr. Madden was arrested in connection with the discovery of ten pounds of phenylacetic acid found during the arrest of Rusty Ridling and Cody Combs in Washita County, Oklahoma. The government alleged that Mr. Madden provided the phenylacetic acid to Mr. Ridling at the end of August, 1991. Mr. Madden, in need of money for legal fees, told Mr. Ridling that he had a substantial quantity of the acid, and asked if Ridling knew of any potential purchasers. Mr. Ridling told Mr. Madden that he might know of someone, and Mr. Madden encouraged him to take the acid and attempt to sell it. Mr. Ridling recovered the acid with Mr. Madden from its hiding place, during which time Mr. Madden discussed the use of the acid in the manufacture of methamphetamine and its possible market value. Mr. Ridling contacted Mr. Combs about selling the acid. Mr. Combs took possession of the acid from Mr. Ridling, intending to find a buyer. In September, 1991, Mr. Madden demanded that Mr. Ridling either return the acid or hand over proceeds from its sale. Mr. Ridling was arrested as he attempted to recover the acid. Mr. Ridling and Mr. Combs agreed to cooperate with the government, and recorded the conversations accompanying the return of the acid to Mr. Madden.
 
 
 3
 We will reverse a conviction for insufficient evidence only if no rational trier of fact could find the defendant guilty beyond a reasonable doubt on every essential element of the offense, Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); United States v. Slater, 971 F.2d 626, 630-31 (10th Cir.1992), reviewing the evidence in the light most favorable to the government. Slater, 971 F.2d at 630-31.
 
 
 4
 Sufficient evidence supported the jury's conclusion that Mr. Madden had both an agreement and an interdependent relationship with his coconspirators. See United States v. Fox, 902 F.2d 1508, 1514 (10th Cir.) cert. denied, 498 U.S. 874 (1990). Mr. Madden possessed the acid, and relied upon Mr. Ridling to find a buyer for it, creating a classic interdependent relationship. II R. 10-16. The testimony of his coconspirators contradicts Mr. Madden's contention that Mr. Madden was not party to any agreement to sell that acid. Mr. Ridling testified that Mr. Madden first mentioned the acid, and solicited Ridling's assistance in selling it. Id. at 10-11. Contrary to Mr. Madden's assertion, it does not appear that Mr. Ridling took the phenylacetic acid and attempted to sell it himself without the agreement and assistance of Mr. Madden. Construing the evidence in the light most favorable to the government, sufficient evidence supported the jury's conviction on the conspiracy count.
 
 
 5
 Ample evidence also supports the jury's conclusion that Mr. Madden distributed the phenylacetic acid knowing, or having reason to believe, that the acid would be used to manufacture methamphetamine. See 21 U.S.C. 841(d)(2). Recorded statements made by Mr. Madden, circumstantial testimony regarding the dearth of legitimate uses for the acid, Mr. Madden's familiarity with methamphetamine, and the testimony of his coconspirators all establish that Mr. Madden had the necessary state of mind for a conviction under 841(d)(2).
 
 
 6
 Testimony regarding the September 1991 telephone conversation also supports Mr. Madden's conviction for use of a telephone in connection with a narcotics conspiracy. Testimony from Mr. Ridling indicated that the substance of the conversation was in furtherance of the conspiracy. Mr. Madden prodded Mr. Ridling to sell the acid, provided instructions for the distribution of the proceeds, and demanded that the coconspirator return the acid if he could not sell it. IV R. 38-39.
 
 
 7
 Finally, we find that the district court did not err in enhancing Mr. Madden's sentence under U.S.S.G. 3B1.1's provision for organizers and leaders of a conspiracy. The district court's finding that Mr. Madden was a leader or organizer will not be reversed unless clearly erroneous. United States v. Hernandez, 967 F.2d 456, 458 (10th Cir.1992). Even accepting Mr. Madden's contention that he was unaware of the participation of Mr. Combs and Mr. Davis, the overwhelming evidence demonstrates that Mr. Madden recruited Mr. Ridling to participate in the conspiracy, and exercised direction and control over the operation. See II R. 10-16, 20-22.
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3