9 F.3d 118
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Vernon KING, Defendant-Appellant.
 No. 92-6363.
 United States Court of Appeals, Tenth Circuit.
 Oct. 26, 1993.
 
 ORDER AND JUDGMENT[1]
 Before BRORBY, BARRETT, and KELLY, Circuit Judges.
 
 
 1
 Mr. King entered a guilty plea to the crime of engaging in a conspiracy to distribute cocaine and was sentenced, inter alia, to 360 months. He appeals the sentence and we affirm.
 
 
 2
 Mr. King was a part of the Juan Carlos Angulo-Lopez cocaine distribution conspiracy.[2] The participants in this conspiracy transported cocaine from Houston to Oklahoma City and then distributed it to local dealers. Mr. King played a significant part in the conspiracy connecting the principals with local dealers and engaging in sales to the local dealers. He was paid a commission, not only for his direct sales, but also for the sales of cocaine made by the principals. Mr. King was a key witness for the Government in its case against the other participants.
 
 
 3
 In his appeal, Mr. King raises seven alleged errors: (1) the term "cocaine base" under 21 U.S.C. 841 (which criminalizes the manufacture and distribution of controlled substances) and U.S.S.G. 2D1.1 (the controlled substance Guideline) is undefined and unconstitutionally vague; (2) the trial court erroneously treated all of the cocaine distributed as base rather than treating a part of it as powder; (3) the 360 month sentence violated Mr. King's Equal Protection rights as secured by the Fifth Amendment; (4) the sentence violated the Eighth Amendment's prescription against cruel and unusual punishment; (5) the trial court erroneously refused to appoint an expert witness to assist Mr. King at sentencing; (6) the trial court erroneously used statements made by Mr. King when he entered his guilty plea and when he testified against his co-conspirators in determining his base offense level; and (7) the trial court's finding that Mr. King conspired to distribute in excess of fifteen kilograms of cocaine was both clearly erroneous and based upon evidence lacking a minimum indicia of reliability.
 
 
 4
 In United States v. Juan Carlos Angulo-Lopez, --- F.2d ---- (No. 92-6370) (10th Cir. Oct. 26, 1993), we decided issues (2) id. at ----, slip op. at 10-11, (3) id. at ----, slip op. at 3-5, and (4) id. at ----, slip op. at 5-7, adversely to Mr. King's coconspirator and that analysis and application is equally applicable to Mr. King and will not be repeated. The judgment of the district court should be affirmed as to these issues. We will address the remaining issues separately.
 
 
 5
 * Vagueness of Term "Cocaine Base"
 
 
 6
 Mr. King asserts 21 U.S.C. 841 and U.S.S.G. 2D1.1 are unconstitutionally vague as they fail to properly define the term "cocaine base." This circuit has specifically held the use of the term "cocaine base" is constitutionally sound. McIntyre, 997 F.2d 687, 710 (10th Cir.1993); United States v. Slater, 971 F.2d 626, 639 (10th Cir.1992); United States v. Turner, 928 F.2d 956, 960 (10th Cir.), cert. denied, 112 S.Ct. 230 (1991). The forensic chemists unequivocally testified the substance recovered was cocaine base. Moreover, participants in the conspiracy testified the conspiracy was distributing cocaine base, and that it was intentionally transformed by conspiracy members into that status. The term "cocaine base" was not vague as applied to the defendant's conviction and sentence in this case.
 
 II
 The Expert Witness
 
 7
 Mr. King asked for an expert witness to aid him at sentencing. The stated reason for the expert was for the expert to provide testimony on the chemical differences between cocaine in its base form (crack) and cocaine in its powdered form. Additionally, the expert was to establish a basis to rebut any lay testimony that certain substances were cocaine base. The stated underlying principle was that only an expert can distinguish between cocaine base and powder.
 
 
 8
 The trial court carefully considered Mr. King's request and issued its thorough written order denying Mr. King's request. In its order, the trial court stated, in part, as follows:
 
 
 9
 King has admitted that he distributed cocaine base and that he participated in a conspiracy involving the sale of cocaine base. At the trial of King's codefendants, King and numerous other witnesses testified as to frequent purchases and sales of large volumes of cocaine base over a period of time.... The witnesses gave credible testimony describing the appearance, physical properties, and volume of the substances sold.... Some of the witnesses and some of the defendants were skilled in the art of converting cocaine ... into cocaine base and were known for the purity and distinctive half-moon shape of their final product. The witnesses were quite obviously familiar with both cocaine base and cocaine.... Moreover, some 400 to 500 grams ... of the substance was subjected to laboratory analysis by trained chemists, and determined to be cocaine base.
 
 
 10
 The evidence is simply overwhelming that the conspiracy in which defendant King participated involved the distribution of at least 35 kilograms of cocaine base and that this amount was reasonably foreseeable to defendant King.... Since ... King points to no evidence which even suggests that additional expert testimony or chemical analysis would be helpful, the court deems it unnecessary to appoint an expert witness at government expense.
 
 
 11
 The relevant statute, 18 U.S.C. 3006A(e)(1), provides that if a criminal defendant is financially unable to obtain expert services and the services are necessary, then the trial court shall authorize counsel to obtain the services. As Mr. King is financially unable to secure the expert services, the sole question becomes whether the expert services are necessary.
 
 
 12
 An indigent defendant in a criminal case who desires the services of an expert witness bears the burden of showing the expert's expected testimony is necessary. In order to show necessity for expert services, a defendant in a criminal case must be specific in showing the exact expert services desired; the specific expected testimony of the expert; how and for what purpose the testimony will be used; and how the expected testimony is necessary to the defense. A showing of mere desirability of an expert is not sufficient to warrant the appointment of an expert witness at government expense. The district court's decision upon an ex parte application for expert services is a mixed question of fact and law which we review utilizing a clearly erroneous standard of review for the facts and a de novo standard of review for the ultimate question of necessity.
 
 
 13
 There exists no conflict in the facts before the trial court which we set forth above.
 
 
 14
 Mr. King's showing of the expert services desired was not particularized. Mr. King failed to show what substances would be examined by his chemist. The evidence shows a staggering quantity of base cocaine (crack) was sold and distributed by the participants in the conspiracy and was never available for testing. The only evidence possible as to its base or powdered form was from the laymen who purchased, handled, cooked, and sold the cocaine. Mr. King did not challenge the correctness of the chemical testing on the comparatively small portion of the cocaine base that had been seized and asserted "defendant will object to the balance of the cocaine being counted as cocaine base but contends it should be counted as cocaine powder."
 
 
 15
 The chemist, had one been authorized by the trial court, could only have testified that the distinction between cocaine powder and base can only be determined by a chemist and that the expert never saw or examined, nor could he have ever seen or examined, the substances distributed which all knowledgeable witnesses described as cocaine base (crack). This issue was relevant only as to sentencing where the standard of evidence utilized is the preponderance of the evidence. The judge who decided the application for expert services had heard all of the laymen witnesses at the time the motion for expert services was presented and specifically stated he would "make the necessary factual findings by a preponderance of the evidence," and "[t]he evidence is simply overwhelming that the conspiracy ... involved the distribution ... of cocaine base." In short, the judge who would decide the sentencing issue of base or powder had already concluded the substance was base and the testimony of an expert, who had never seen or handled the substances at issue, could not possibly overcome the preponderance of evidence standard he must employ in deciding the issue.
 
 
 16
 We conclude and hold under the facts of this case that Mr. King failed to make the required showing of necessity.
 
 II
 Use of Prior Statements for Sentencing
 
 17
 Mr. King entered into a written plea agreement with the Government which in relevant part provided: "[N]o information given by this defendant subsequent to this agreement will be used against him in any criminal case." He alleges that this agreement was violated. U.S.S.G. 1B1.8 provides that when a defendant agrees to provide information and the government agrees the information so provided will not be used against defendant, then such information will not be used in determining the Sentencing Guidelines range. See also United States v. Evans, 985 F.2d 497 (10th Cir. ), cert. denied, 113 S.Ct. 2942 (1993).
 
 
 18
 Mr. King has never indicated with specificity the statements he made that were utilized in violation of the plea agreement. The presentence report stated the information provided by Mr. King was not used. Mr. King cites to an addendum to the presentence report which makes reference to statements made by Mr. King after the plea agreement was entered. The comments of the district court at the sentencing hearing, however, indicate that such statements were not used in sentencing as testimony by Mr. King's coconspirators was adequate to establish the quantity of drugs attributable to Mr. King. Mr. King cites to us the district court's remarks from the bench during sentencing, but the gist of these remarks is that whether Mr. King's statements at trial were admissible or not, the evidence at trial (the other testimony) "was so substantial ... that your position fails."
 
 
 19
 Mr. King has failed to specify what information he provided to the Government including where and when and he has further failed to specify how this information was used to calculate his sentencing range. Mr. King makes no more than conclusory allegations, and the district court is affirmed.
 
 III
 Quantity of Cocaine
 
 20
 The presentence report attributed over thirty-five kilograms of base cocaine to Mr. King for sentencing purposes. This was done by detailing the quantities distributed by the conspiracy and concluding that as Mr. King was an integral member of the conspiracy, this was relevant conduct.
 
 
 21
 Mr. King, in his brief, details the quantity he was personally associated with, i.e., the amounts he personally handled and informs us this amounted to only 11.9 kilograms. Mr. King asserts it is error to attribute any further quantities of crack to him for sentencing purposes. Specifically, he argues he is accountable only for that quantity of drugs that was reasonably foreseeable with the criminal activity he agreed to jointly undertake.
 
 
 22
 We turn to the record on appeal. One of the witnesses at trial, Ms. Johnson, testified that she transported from between one to three kilograms of cocaine base from Houston to Oklahoma City, and that over a five to six month period she made one or more trips per week. She testified Mr. King set everything up and distributed as he knew what each of his customers wanted. The presentence report estimated the quantity at twenty-five kilograms, which falls squarely within the boundaries of Ms. Johnson's testimony and is a conservative estimate insofar as it is based primarily on the one-kilogram-per-trip figure and assumes only one trip per week. Additionally, Mr. Smiley testified he made numerous trips to and from Houston over a three-month period many of which involved Mr. King transporting cocaine for resale. The quantity involved was very conservatively estimated as ten kilograms. Further quantities were testified to by others.
 
 
 23
 Assuming, solely for the purpose of argument, that Mr. King's legal premise is fully founded, his argument is not supported and, in fact, is fully contradicted in the record. A defendant is not necessarily liable for the entire quantity of drugs involved in a drug conspiracy, but he is liable for the quantity of drugs that was reasonably foreseeable in connection with the scope of the agreement he jointly agreed to undertake. United States v. Evans, 970 F.2d 663, 678 (10th Cir.1992), cert. denied, 113 S.Ct. 1288 (1993). This is a factual conclusion which we review utilizing a clearly erroneous standard of review. The findings of the sentencing court are supported by substantial evidence and are not clearly erroneous.
 
 
 24
 In conclusion, we hold the statute and Guidelines constitutional; the trial court's refusal to appoint an expert was not erroneous; improper evidence was not used against Mr. King; and the sentence was supported by substantial evidence. We therefore AFFIRM the judgment and sentence.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 The related cases are:
 United States v. McGee, No. 92-6348
 United States v. Coleman, No. 92-6356
 United States v. Ricorte Angulo-Lopez, No. 92-6364
 United States v. Juan Carlos Angulo-Lopez, No. 92-6370
 United States v. Preciado-Quinonez, No. 92-6371
 United States v. Griffin, No. 92-6375
 United States v. Martinez-Perez, No. 92-6376
 United States v. Barber, No. 92-6380